UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | Case No.: 1:10 CV 571 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| ROBERT J. FAVINO, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Plaintiff Wells Fargo, ("Plaintiff" or "Wells Fargo"), brings the instant action against Defendant, Robert J. Favino ("Favino" or "Defendant"). Favino has named the Federal Housing Administration ("FHA"), an agency within the United States Department of Housing and Urban Development ("HUD"), as a Third Party Defendant. Pending before the court is Plaintiff's Motion to Dismiss Favino's Counterclaim (ECF No. 4), FHA's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 3), and Defendant's Motion to Dismiss (ECF No. 13). For the reasons stated herein, the court grants Plaintiff's Motion to Dismiss, FHA's Motion to Dismiss for Lack of Subject Matter Jurisdiction ,and denies Defendant's Motion to Dismiss.

## I. FACTUAL BACKGROUND

On or about August 27, 2001, Favino entered into a mortgage with Washington Mutual Home Loans Inc. (Counterclaim/Complaint at ¶ 10, ECF No. 1-1; *see also* Open-End Mortgage ("Mortgage"), signed by Favino on August 27, 2001, Ex. C, ECF No. 4-1; note ("Note"), signed by

Favino on August 27, 2001, Ex. A, ECF No. 4-1.)  He maintains that toward the end of 2007 and the beginning of 2008, he fell behind on his loan.  (*Id.* at ¶ 11.)  Favino entered into a Loan Modification Agreement ("LMA") with Wells Fargo, as lender, in March of 2008.[1]  (*Id.* at ¶ 12.) The LMA was for the amount of $107,390.60, payable over 30 years at an interest rate of 7.5% per year.  (*Id.* at ¶ 13; LMA ¶ 1.)  Monthly payments of principal and interest were $750.89, with the first due date of May 1, 2008.  (*Id.* at ¶ 13; LMA ¶ 2.)  In addition to principal and interest, Favino also had to pay "taxes, insurance premiums, assessments, escrow items, impounds, and other amounts due under the Note."  (Pl. Mot. to Dismiss at 8, ECF No. 4.)  Favino contends that from May 1, 2008 until September 2008, he "made his monthly mortgage payment in a timely fashion." (*Id.* at ¶¶14, 45.)  After September of 2008, he lost his job at DHL, and asserts that he had difficulty making his mortgage payment.  (*Id.* at ¶ 15.)  He states that he contacted Wells Fargo to see if they would help him while he was on unemployment, and actively seeking employment, but Wells Fargo refused.  (*Id.* at ¶¶ 15, 16, 38.)  Favino maintains that Wells Fargo "failed to provide [him] with a face-to-face meeting pursuant to FHA policy."  (*Id.* at ¶ 42.)  Favino contends he was then charged late fees and other charges.  (*Id.* at ¶¶ 33-50.)  He alleges that this experience caused him "aggravation, frustration, sleepless nights and worry, embarrassment," and humiliation.  (*Id.* at ¶¶ 35, 43.)

      In December of 2008, Wells Fargo filed the instant action in the Cuyahoga County Common Pleas Court, alleging it was the holder of the Note, as modified by the LMA, and secured by the Mortgage.  (Counterclaim/Complaint ¶¶ 15, 16, 41, 45; Note; Mortgage; LMA.)  Along with his

---

[1]      Though Favino contends that the date the parties entered the agreement was March 13, 2008, the Loan Modification Agreement shows that it was entered into on May 15, 2008.

- 2 -

Amended Answer, Favino filed a counterclaim against Wells Fargo.  Upon being served with Favino's Third Party Complaint, the United States, on behalf of the FHA, removed this matter to this court.  (FHA Mot. to Dismiss at 2, ECF No. 3-1.)  In Count One, Favino alleges that Wells Fargo violated the Fair Debt Collection Practices Act ("FDCPA").  (Counterclaim/Complaint ¶¶ 19-21.)  He contends that Wells Fargo is his creditor, and that it violated §§ 1692d, 1692d(5), 1692e, 1692e(2), 1692f, and 1692f(1).  In Count Two, Favino alleges invasion of privacy by intrusion upon seclusion.  (*Id*. at ¶¶ 22-26.)  In Count Three, he alleges that Wells Fargo violated the Ohio Consumer Sales Practices Act ("OCSPA") by violating the FDCPA.  (*Id*. at ¶¶ 27-29.)  In Count Four, Favino alleges negligent and intentional infliction of emotional distress.  (*Id*. at ¶¶ 30-39.)  In Count Five, he alleges  a claim for "wrongful foreclosure."  (*Id*. at ¶¶ 40-43.)  In Count Six, he alleges a claim for breach of contract and the covenant of good faith and fair dealing.  (¶¶ 44-45.)  In Count Seven, Favino alleges Wells Fargo committed a "breach of fiduciary obligation/negligent loan servicing."  (*Id*. at ¶¶ 46-51.)

Favino contends that the FHA has an interest in the mortgage between Wells Fargo and Favino because it insured the mortgage.  (*Id*. at ¶ 59.)  He maintains that "in the event Defendant Favino is found to have defaulted on his mortgage and the home is properly foreclosed upon, Plaintiff will make application to Third Party Defendant for payment."  (*Id*. at ¶ 61.)  He further alleges that Wells Fargo "has no incentive to work out an acceptable agreement with Defendant Favino due to the fact that upon foreclosure of the property, Plaintiff will make a claim for payment on the mortgage through FHA."  (*Id*. at ¶ 63.)  Favino contends that FHA is a "third party beneficiary to the contract that is the underlaying subject of this lawsuit.  Defendant Wells Fargo's refusal to consider a reduction in the principle balance for the loan that this [sic] the subject of these

proceedings is likely to increase the liability FHA has to Wells Fargo upon the consummation of any foreclosure granted by this court." (*Id*. at ¶ 63.) Favino maintains that "[c]ontractual rights of Third Party Defendant FHA will be negatively affected by Defendant Wells Fargo's failure to mitigate FHA's potential damages." (*Id*. at ¶ 64.) Favino states that he is a "Third Party Beneficiary of FHA's guarantee of the subject mortgage note." (*Id*. at ¶ 65.) He asserts that FHA's "failure to protect its interest by protecting its potential loss on the possible foreclosure of Defendant Favino's home is detrimental to Defendant Favino as both a Taxpayer [sic] of the United States and impacts his rights under the contract underlying this foreclosure action making resolution of the foreclosure complaint impossible." (*Id*. at ¶ 66.) Favino states that Ohio Revised Code Section 2721.01 through 2721.15 "provides this court to issue a declaratory judgment regarding the rights and obligations of Third Party Defendant FHA and other parties to this matter." (*Id*. at ¶ 67.) Favino also seeks legal fees and the costs of prosecuting the third party complaint, along with any other relief the court deems appropriate. (*Id*. at 14.)

## II. FHA'S MOTION TO DISMISS

### A. Rule 12(b)(1) Standard

FHA is seeking dismissal of Favino's Complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally consist of two types. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Facial

- 4 -

attacks to subject matter jurisdiction merely question the sufficiency of the pleadings, and courts should apply the Rule 12(b)(6) standard in considering them.  *Id.*  In such a case, courts should accept the allegations in the complaint as true and construe them in a light most favorable to the nonmoving party.  *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)).  Factual attacks, the second type of challenge to the court's subject matter jurisdiction, do not question the sufficiency of the pleading's allegations, but rather contest the factual predicate for subject matter jurisdiction. *Id.*  In such a case, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  *Id*.; *Moir*, 895 F.2d at 269.  FHA has asserted a facial attack to the court's subject matter jurisdiction, contending Favino has not shown there has been a valid waiver to the United States' sovereign immunity, enabling him to sue and the court to have jurisdiction over the suit.

### B. Sovereign Immunity

The United States may not be sued without its consent.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Congress may waive the sovereign immunity of the United States, but only through unequivocal statutory language. *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981).  It is well-established that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."  *Soriano v. United States,* 352 U.S. 270, 276 (1957).  This principle also extends to agencies of the United States, which are immune absent a showing of waiver of sovereign immunity.  *See Whittle v. U.S.*, 7 F.3d 1259, 1262 (6th Cir. 1993) (citing *United States v. Testan*, 424 U.S. 392 (1976)).

In order to establish that this court has jurisdiction over Favino's claim against the FHA, he

must demonstrate two things: that a statutory grant of jurisdiction exists, and that the government has expressly and unequivocally waived its sovereign immunity with regard to the type of claim Favino wishes to raise.  *Leistiko v. Secretary of Army*, 922 F. Supp. 66, 70 (N.D. Ohio 1996).  Favino bears the burden of establishing subject matter jurisdiction of the court over his claim.  *Whittle*, 7 F.3d at 1262.  Therefore, in order to survive the Motion to Dismiss, Favino must demonstrate the court has jurisdiction over his claim against the FHA.

Favino fails to cite any statute in his Third Party Complaint against the FHA which can act as a waiver of sovereign immunity.  He only cites to the declaratory judgment provisions of the Ohio Revised Code §§ 2721.01-2121.15.  (Counterclaim/Complaint ¶ 67.)  This state statute does not serve as a valid waiver of the United States' sovereign immunity.  The Declaratory Judgment Act, 28 U.S.C. § 2201, also does not act as a waiver of sovereign immunity.  *See United States v. City of Menominee*, 727 F.Supp. 1110, 1116 (W.D. Mich. 1989) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-74 (1950)).  The Declaratory Judgment Act does not confer subject matter jurisdiction, instead it provides discretionary ancillary relief.  *See BellSouth Telecommunication, Inc. v. U.S.*, 991 F. Supp. 920, 930 (E.D. Tenn. 1996) (quoting *Michigan Sav. and Loan League v. Francis*, 683 F.2d 957, 960 (6th Cir. 1982)).  Favino's reference to the FDCPA violations by Wells Fargo also does not serve as a valid waiver of the United States' sovereign immunity.  *See Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007); *Greenland v. Van Ru Credit Corp.*, No. 5:06-cv-2, 2007 WL 4245409, at *4 (W.D. Mich. Nov. 29, 2007).

Favino also cannot rely on any assertion of a tort claim against the FHA as a basis for jurisdiction over it.  The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, provides a limited waiver of the United States' sovereign immunity for certain tort actions.  However, the

FTCA does not authorize suits against a federal agency in its own name.  *See* 28 U.S.C. § 2679(a).  The United States is the only proper defendant to be sued under the FTCA.  *Allgeier v. U.S.*, 909 F.2d 869, 871 (6th Cir. 1990).  A "[f]ailure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction."  *Id.*  Therefore, his claim fails on this basis also.

Favino has not specifically stated within his Counterclaim or Third Party Complaint if he is pursuing such a claim, but it appears that he may be attempting to seek relief under the loss mitigation provisions of 12 U.S.C. § 1715u.  Section 1715u(a) does state that "[u]pon default or imminent default, as defined by the Secretary of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure...or subsection (c), [FN1] as provided in regulations by the Secretary."  However, Congress explicitly stated in 12 U.S.C. § 1715u(d) that "[n]o decision of the Secretary to exercise or forgo exercising any authority under this section shall be subject to judicial review."  *See also Dean v. Dep't of Hous. & Urban Dev.*, No. 00-CV-56H, 2000 WL 575576, at *4 (W.D.N.Y. Mar. 14, 2000).  Therefore, the loss mitigation provision also cannot serve as a basis for subject matter jurisdiction.

In response, Favino asserts that this court does have jurisdiction because federal law provides jurisdiction.  Favino cites to 5 U.S.C. § 706(1), which he states "provides for federal court judicial review to *compel federal agency action unlawfully withheld or unreasonably delayed*."  (emphasis in original) (Opp. at 5, ECF No. 7-1.)  Though not previously mentioned in his Complaint, Favino cites for the first time in his Opposition, to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706.  The APA provides a cause of action for people "adversely affected or aggrieved by an agency action within the meaning of a relevant statute...."  5 U.S.C. § 702.  The APA explicitly

- 7 -

withdraws this cause of action if a statute precludes judicial review or if the agency action is committed to agency discretion by law. *See* § 701(a)(1); *McCarthy v. Middle Tennessee Elec. Membership Corp.*, 466 F.3d 399 (6th Cir. 2006). The court in *Dean*, 2000 WL 575576 at *3, faced similar assertions by the plaintiff and the court held that:

> [i]n this case, plaintiff does not address the prohibition of judicial review set forth in 12 U.S.C. §§ 1710(a)(2) and 1715u(d). Instead, plaintiff alleges subject matter jurisdiction under the APA, which confers a cause of action upon persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The APA, however, withdraws the cause of action if a statute precludes judicial review or if agency action is committed to agency discretion by law. 5 U.S.C. § 701(a); Kirby Corp. v. Pena, 109 F.3d 258, 261 (5th Cir.1997). Thus, while there is a "strong presumption" that Congress intends there to be judicial review of administrative agency action, *see, e.g., Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986), this presumption, "like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984)...However, the Court "has found the standard met, and the presumption favoring judicial review overcome, whenever the congressional intent to preclude judicial review is 'fairly discernible' in the statutory scheme." *Block, supra*, 467 U.S. at 351.

(internal citations omitted); *see also Ferrell v. U.S. Dep't of Hous. & Urban Dev.*, 186 F.3d 805, 812 (7th Cir. 1999) (stating 12 U.S.C. § 7115u (d) precludes judicial review of any decision by the Secretary to exercise or forgo exercising any authority under this statute). Favino does not address the prohibition of judicial review set forth in § 1715u(d). Therefore, he has not asserted a basis for the court's jurisdiction.

Additionally, although Favino cites to the APA, he does not identify or even allude to any administrative action by HUD or FHA that he is appealing. The APA "waives the government's sovereign immunity, 5 U.S.C. § 702, and provides subject matter jurisdiction in conjunction with

- 8 -

28 U.S.C. § 1331 over 'final agency action.' 5 U.S.C. § 704."  *St. Andrews Park, Inc. v. U.S. Dept. Of Army Corps of Engineers*, 314 F. Supp.2d 1238, 1244 (S.D. Fla. 2004).  In accordance with 5 U.S.C. § 704, if the administrative action in question is not "final," federal jurisdiction is lacking. *Id*. (internal citations omitted).  In order for the agency action to be final, two conditions must be met: (1) "the action must mark the 'consummation' of the agency's decisionmaking process"; and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997).  Favino neither alleges a final agency action, nor any agency action at all.

Favino also alleges this court has jurisdiction over the "FHA/HUD" through 24 C.F.R. § 203.500, 24 C.F.R. § 203.501, and 24 C.F.R. § 203.604, because FHA/HUD has a "duty to police the mortgage market place and a duty to take appropriate action to police the mortgage servicing industry to 'generate the smallest possible loss to the Department [FHA/HUD].'"  (*Id*. at 7.)  In addition, Favino contends that the "federal district court has jurisdiction to determine that any informal federal agency or inaction is 'otherwise not in accordance with law,' including ordering the Plaintiff Wells Fargo, and the Third Party Defendant, FHA/HUD, to comply with FHA/HUD regulations in foreclosure proceedings.  (*Id*. at 10.)  However, Favino fails to point to any explicit waiver of the United States' sovereign immunity found within a statue to support any of these positions.  Therefore, he has not asserted a basis for the court's jurisdiction.

In addition, Favino cites to the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607, which he contends "sought to address Congress' concerns over 'controlled business arrangements' whereby real estate settlement business is referred between two affiliated entities."  (*Id*.) He contends that FHA failed to "protect its interest by protecting its potential loss

- 9 -

on the possible foreclosure of Defendant Favino's home.  (Third Party Complaint  ¶ 66).  This implicates the FHA under REPSA.  It also means that the Defendant Favino has a private cause of action to police practices that are not being policed by FHA."  (*Id*. at 6.)  However, Favino fails to cite to any provision of REPSA which provides a valid waiver to the United States' sovereign immunity.  Therefore, this is also not a basis for jurisdiction.

Favino had the burden of proving the court had subject matter jurisdiction over his claim once it was contested.  He has failed to provide any basis for concluding that the United States has waived its sovereign immunity, and that it, the FHA, or HUD can be sued.  Thus, this court lacks subject matter jurisdiction over the claims against the FHA, and the Complaint must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### III. RULE 12(B)(6) MOTION TO DISMISS

### A.  Standard

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6).  *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).  The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the

- 10 -

elements of a cause of action will not do." *Id.* at 555.  Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*  A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

Defendant disputes the appropriate standard of review to be applied, and contends that the there is a liberal pleading standard applied, and that only a short plain statement of the claim showing that the pleader is entitled to relief is necessary, specific facts are not necessary, under the Sixth Circuit's decision in *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488-89 (6th Cir. 2009).  He also relies on the Six Circuit's statement that *Twombly* may be limited to expensive, complicated litigation.  *Id.*  However, *Iqbal* was decided after *Tackett*, and made it clear that

- 11 -

"*Twombly* expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S. Ct. at 1953. Furthermore, the Sixth Circuit specifically acknowledged that *Twombly* is not limited in its application, stating that "[t]he Court's decision in *Iqbal* made clear that the *Twombly* standard is not limited to 'sprawling, costly, and hugely time-consuming litigation,' dispelling such speculation by courts both within and outside this circuit." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 n.4 (6th Cir. 2009).

### B. Plaintiff's Motion to Dismiss

Wells Fargo moves the court to dismiss Defendant's counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. It asserts that it is not subject to the FDCPA or the OCSPA, and therefore those claims should be dismissed. (Pl. Mot. to Dismiss at 7, ECF No. 4.) Wells Fargo contends that Favino has failed to identify the contract his contract claim applies to, and that the claim is not supported by the terms in those agreements. (*Id.*) Wells Fargo also maintains that Favino's tort claims should be dismissed because his Counterclaim is "devoid of factual allegations that show he is entitled to relief." (*Id.*) For these reasons, Wells Fargo concludes that the Counterclaim must be dismissed in its entirety.

#### 1. FDCPA Claim

In Count One, Favino alleges that Wells Fargo violated the FDCPA. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting 15 U.S.C. § 1692(e)). The FDCPA's provisions generally only apply to "debt collectors." 15 U.S.C. § 1692k;

- 12 -

*Police v. National Tax Funding, L.P.,* 225 F.3d 379, 403 (3d Cir. 2000).   15 U.S.C. § 1692a(6)(F)(ii),(iii) states that "debt collector" does not include**:**

> [a]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity. . .(ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4).  The term "debt collector" does not include the creditor collecting its own debt.  *Police*, 225 F.3d at 403.  The *Montgomery* court stated that "the legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors." 346 F.3d at 698 (internal citations omitted).  Therefore, "actual creditors–the extenders of credit or bona fide assignees–generally are not subject to the Act." *Meads v. Citicorp Crdit Services, Inc.*, 686 F. Supp. 330, 333 (S.D. Ga. 1988).  The debt at issue here is governed by the LMA.  Wells Fargo is not a "debt collector" on that debt, but is the lender–Favino's creditor.  Therefore, Wells Fargo cannot be held liable as a debt collector under the FDCPA, and this claim fails as a matter of law.  *Montgomery*, 346 F.3d at 698.

In any event, even if Favino were able to properly allege that Wells Fargo is a debt collector, his FDCPA claim would still fail.  He fails to allege any facts to support his claim that any of its provisions were violated.  He only lays out the provisions of the FDCPA he contends Wells Fargo violated.  Favino initially alleges that Wells Fargo violated § 1692d, which prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person." (Counterclaim/Complaint ¶ 20(i).)  The only facts alleged by Favino in support of this claim is that Wells Fargo would not assist him in paying his mortgage after he lost his job at DHL, and therefore

- 13 -

he was unable to make his payments under the LMA, causing Wells Fargo to foreclose on the LMA and assess late fees and charges.  These facts fail to allege conduct that the natural consequence of which is to harass, oppress, or abuse.  *See Housh v. Peth*, 133 N.E.2d 340, ¶ 3 of the syllabus (Ohio 1956).  He only identifies conduct that is allowed under Ohio law.  *See Housh v. Peth*, 133 N.E.2d 340, ¶ 3 of the syllabus (Ohio 1956).  Therefore, Favino has not stated a claim under this statute.

The same is true for the other statutes Favino cites under the FDCPA.  He cites to § 1692d(5), which prohibits debt collectors from making harassing telephone calls. (Counterclaim/Complaint ¶ 20(ii).)  Favino does not allege that Wells Fargo called him at any time. He also cites to § 1692e, which prohibits false, deceptive, or misleading representations to collect a debt.  (Counterclaim/Complaint ¶ 20(iii).)  Favino does not allege any facts of any misrepresentations made by Wells Fargo.  In addition, he cites to § 1692e(2), which prohibits false representations of the character, amount, or legal status of the alleged debt. (Counterclaim/Complaint ¶ 20(iv).)  He disputes the collection of late fees, claiming they were the result of Wells Fargo's unreasonable procedures.  (Counterclaim/Complaint ¶ 38.)  However, Favino does not include any facts of any misrepresentations made by Wells Fargo of the status of the debt, and fails to point to any contractual provisions which demonstrates that any late fees or other charges were prohibited by the LMA.  The Complaint does not provide any factual support as to why and how the amount included in the statement of account is, in fact, "false," "deceptive" or "misleading," or how late fees are a false representation of his debt.  Thus, even accepted as true, Favino's threadbare allegations without any factual support simply do not state a claim to relief.

Favino also cites to § 1692f, which prohibits unfair or unconscionable means to collect or attempt to collect the alleged debt.  (Counterclaim/Complaint ¶ 20(v).)  As stated above, the only

- 14 -

facts he has provided are that Wells Fargo initiated foreclosure proceedings after he lost his job and became unable to continue making payments.  Again, the court finds that he has alleged no supporting facts at all in his Counterclaim to support this allegation.  Favino has not shown how the initiation of foreclosure proceedings after he was unable to make any payments was "unfair or unconscionable."

Additionally, Favino cites to § 1692f(1), which prohibits the collection of any amount not authorized by the agreement creating the debt or permitted by law.  (Counterclaim/Complaint ¶ 20(vi).)  He has alleged that Wells Fargo foreclosed on the LMA after he could not make his payments and he was assessed late fees.  Ohio law allows Wells Fargo to collect this debt.  *See Housh,* 133 N.E.2d at 340 (a creditor has "a right to take reasonable action to pursue his debtor and persuade payment").  Favino does not allege any facts that demonstrate how the late fees were improper. Thus, even accepted as true, his threadbare allegations without any factual support simply do not state a claim to relief.

Therefore, even if Wells Fargo were a debt collector, Favino has not put forth any facts to support his claim for relief under the FDCPA, and accordingly, this claim must be dismissed.

### 2.  OCSPA

Favino alleges in Count Three that Wells Fargo violated § 1345.01 of the Ohio Revised Code by violating the FDCPA.  As stated above, Favino's FDCPA claim fails, and therefore this cannot be a basis for his OCSPA claim.  In addition, as a financial institution, Wells Fargo is not subject to liability under the OCSPA, and on this basis his claim must also fail.  The OCSPA applies to "consumer transactions" defined in § 1345.01(A) of the Ohio Revised Code.  This section states that "[c]onsumer transactions does not include transactions between persons defined in sections 4905.03

and 5725.01 of the Revised Code, and their customers. . . ." Ohio Rev. Code § 1345.01(A).  Section

5725.01(A)(1) states that the term "financial institution" includes "[a] national bank organized and

existing as a national bank association pursuant to the 'National Bank Act,' 12 U.S.C. 21."

Therefore, the OCSPA does not apply to transactions between national banks and their customers.

*See Reagans v. Mountainhigh Coachworks, Inc.,* 881 N.E.2d 245, ¶ 33 (Ohio 2008) ("As a general

matter, transactions between financial institutions and their customers are exempted from the

definition of a 'consumer transaction' subject to the Consumer Sales Practices Act.").

        Favino refers to Wells Fargo Bank, N.A. in his Counterclaim, and within the same paragraph

also contends it is a supplier as defined by the OCSPA.  (Counterclaim/Complaint ¶ 5.)  The Office

of the Comptroller of the Currency's website provides a list of national banks, which demonstrates

that Wells Fargo is in fact a national bank.[2]  Office of the Comptroller of Currency, *National Banks*

*Active as of 2/28/11*, US Department of the Treasury, (Mar. 17, 2011)

http://www.occ.treas.gov/topics/licensing/national-bank-lists/bank-list-national-by-name-v2.pdf.

Therefore, it is clear that Wells Fargo is a national bank, and accordingly is a financial institution

---

[2]

The Sixth Circuit has stated that a court may consider public records and matters of which
a court may take judicial notice without converting a motion to dismiss into a motion for
summary judgment.  *See Weiner v. Klais & Co*., 108 F.3d 86, 89 (6th Cir. 1997).  Rule 201
of the Federal Rules of Evidence permits a court to take judicial notice of facts that are not
subject to reasonable dispute in that they are either generally known within the territorial
jurisdiction of the trial court or capable of accurate and ready determination by resort to
sources whose accuracy cannot reasonably be questioned.  Public records and government
documents are generally considered "not to be subject to reasonable dispute." *Jackson v.
City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).  Courts have found this to also include
public records and government documents available from reliable sources on the Internet.
*See Total Benefits Planning Agency, Inc. v. Anthm Blue Cross & Blue Shield*, 630 F. Supp.
2d 842, 849 (S.D. Ohio 2007); *U.S. ex rel. Dingle v. BioPort Corp.,* 270 F.Supp.2d 968. 972
(W.D. Mich. 2003) (internal citation omitted); *Cali v. E. Coast Aviation Servs., Ltd.,* 178 F.
Supp.2d 276, 287 (E.D.N.Y. 2001).

under the OCSPA, and therefore not subject to liability.  Thus, Favino's claim under the OCSPA
must be dismissed.

### 3. Breach of Contract

Favino alleges a breach of contract claim in Count Six.  Under Ohio law, a breach of contract
claim is generally pleaded by stating "(1) the terms of the contract, (2) the performance by the
plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration."
*American Sales, Inc. v. Boffo,* 593 N.E.2d 316, 321 (Ohio App. 1991) (internal citations omitted).
For the first element, Favino alleges that the LMA provided that his balance was $107,390.60 with
a fixed interest rate of 7.5%, and that his "payment will be $750.89 commencing May 1, 2008."
(Counterclaim/Complaint ¶ 13.)  The LMA, though, included payments for "taxes, insurance
premiums, assessments, escrow items, impounds, and all other payments that the Borrow is
obligated to make under the Security Instrument," in addition to payments for principal and interest.
(Complaint at 7 (LMA), ECF No. 4-1.)  For the second element, Favino's performance, he alleges
that from May until September 2008, he "made his monthly payment in a timely fashion."
(Counterclaim/Complaint ¶ 14.)  Based on what he has represented as his payments, the court for
the purpose of this Motion, takes this to mean the amount of $750.89, excluding taxes, insurance
premiums, and other escrow items.  This action though, was not filed until December of 2008.  He
does not allege he made the payments for the months of September, October, November, December,
or any other month beyond September of 2008.  Since Favino has failed to allege facts to prove his
own performance, he cannot satisfy the second element of a breach of contract claim.

In order to satisfy the third element, Favino needed to allege facts that show Plaintiff
breached the contract.  Favino does not put forth any facts that demonstrate how Wells Fargo

- 17 -

breached the LMA.  He states that Wells Fargo would not assist him in making his payment after he lost his job, and that "WELLS FARGO breached the mortgage contract and foreclosed anyway." (Counterclaim/Complaint ¶ 45.)  Favino does not state how Wells Fargo was under any obligation to help him when he lost his job, or how its actions were in violation of the LMA.  Since Favino has not provided facts sufficient to plead a claim of breach of contract, his claim must therefore be dismissed.

### 4. Invasion of Privacy

In Count Two, Favino alleges Wells Fargo "intentionally interfered, physically or otherwise, with the solitude, seclusion, or private concerns or affairs of Defendant Favino."  (*Id*. at ¶¶ 22-26.) The Ohio Supreme Court has recognized an invasion of privacy tort for an unreasonable intrusion into one's seclusion.  *See Housh v. Peth*, 133 N.E.2d 340, at ¶ 2 of the syllabus.  The *Housh* court also held that creditors have a "right to take reasonable action to pursue his debtor and persuade payment." *Id*. at ¶ 3 of the syllabus.  The *Housh* court further stated that "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities" is actionable. *Id*. at ¶ 2 of the syllabus.  Examples of actions by a creditor that are not reasonable are

> where a creditor or his representative initiates a campaign to harass and torment the debtor, telephones the debtor six or eight times every day at her home and place of employment-some calls as late as 11:45 p.m.- over a period of three weeks, telephones the debtor's superiors and informs them of the debt, and calls the debtor at her place of employment three times within a period of 15 minutes with a resultant threat of loss of employment.

*Id*. at ¶ 4.  Other types of torment that are actionable include a creditor making forty to fifty calls to the debtor, using foul language, calling the debtor's sister and friend at least twice to inform that a

warrant had been issued for the debtor's arrest, calling the debtor's landlord, and sending the debtor's employer letters and faxes about the debt.  *King v. Cashland,* Nos. 18208, 99-1640, 2000 WL 1232768, at *2 (Ohio App. Sep. 1, 2000).  Favino does not allege any facts such as these in support of his claim.  He states no facts in support of this claim.  He states within his Counterclaim that he entered into the LMA, lost his job, and fell behind on his payments, which Wells Fargo would not assist with, and then it proceeded to initiate foreclosure proceedings.  Wells Fargo's actions neither qualify as a campaign of harassment and torment, nor activities done to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.  His threadbare allegations without any factual support simply do not state a claim to relief, and this claim must be dismissed.

5. Negligent or Intentional Infliction of Emotional Distress

Count Four is a claim for negligent or intentional infliction of emotional distress.  Favino does not provide any facts in support of these claims.  He just recites legal elements.  To prevail on a claim of intentional infliction of emotional distress under Ohio law, a

> plaintiff must satisfy four elements: 1) the defendant intended to cause emotional distress or know or should have known that the actions taken would result in emotional distress to the plaintiff; 2) the defendant's conduct was "extreme and outrageous; 3) the defendant's actions proximately caused the plaintiff's psychic injury; and 4) the plaintiff's mental anguish is serious and "of a nature that 'no reasonable man could be expected to endure it.'"

*Boyd v. Bressler*, 18 F.App'x 360, 366-67 (6th Cir. 2001).  The conduct at issue is "outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable to a civilized community."  *Id.* (internal citation omitted).  The standard articulated by the Ohio Supreme Court stipulates that this

- 19 -

cause of action is reserved for behavior of the most extreme sort. *Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666 (1983) (abrogated on other grounds). The court further noted that it is insufficient to prove "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id*. at 671. Liability does not extend to actions which are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*.

In order to recover for emotional damages without physical harm under Ohio law, the emotional injuries must be foreseeable, and must be severe and debilitating. *See Banford v. Aldrich Chem. Co.*, 932 N.E.2d 313, 318-321 (2010); *Doyle v. Fairfield Machine Co.*, 697 N.E.2d 667, 685-686 (Ohio App. 1997). The Ohio Supreme Court has stated, "[t]he emotional injury or distress must be beyond trifling mental disturbance, mere upset, or hurt feelings." *Banford*, 932 N.E.2d at 319. The Court has also stated, "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 451 N.E.2d 759, 765 (1983). Additionally, the Ohio Supreme Court has provided a "non-exhaustive litany of some examples of serious emotional distress [which] should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id*.

Favino does not include any facts to establish any of these elements. He does not provide any facts regarding any conduct by Wells Fargo that is "beyond all possible bounds of decency" and "utterly intolerable to a civilized community." The most that could be read into his Counterclaim from the general facts he states, is that after entering the LMA, he lost his job and could not make

- 20 -

his payments, which Wells Fargo would not help with, and it proceeded to initiate foreclosure proceedings against him.  He disputes late charges assessed by Wells Fargo, but even if this conduct were wrongful in some way, it is not extreme and outrageous conduct cognizable under a claim for intentional infliction of emotional distress.

Favino contends that this experience has caused him "aggravation, frustration, sleepless nights and worry, embarrassment."  However, he has not provided any facts or made any allegations to meet the severe and debilitating requirement in order to recover for emotional damages.  His emotional injuries appear to be no more than "mere upset, or hurt feelings," which is not enough to meet the requirements for recovery under Ohio law.  His threadbare allegations without any factual support simply do not state a claim to relief, and accordingly this claim must be dismissed.

### 6. Wrongful Foreclosure

Count Five of the Counterclaim alleges wrongful foreclosure on three bases.  Favino alleges: (1) Wells Fargo "either grossly, willfully, carelessly, recklessly and/or negligently attempted to foreclose on Defendant Favino's property without the right to do so under the HUD regulations and [(2)] the compliance of the Defendant Favino with the Loan Modification Agreement dated March 2008; and (3) Wells Fargo "failed to provide Defendant with a face-to-face meeting pursuant to FHA policy."  (Counterclaim/Complaint ¶¶ 41-42.)

There is no private right of action for breach of HUD regulations or FHA policy.  There is also no private right of action available to a mortgagor for a mortgagee's noncompliance with the National Housing Act, 12 U.S.C. § 1701.  *See Mitchell v. Chase Home Fin. LLC,* No. 3:06-CV-2099-K, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008).  The *Mitchell* court further stated that "the regulations promulgated under the National Housing Act govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the

mortgagee's failure to follow said regulations." *Id.*; *see also Roberts v. Cameron-Brown Co.,* 566 F.2d 356, 360-61 (5th Cir. 1997); *In Re Miller,* 124 F. App'x 152, 155 (4th Cir. 2005); *Leggette v. Washington Mutual Bank*, No. 3:03-CV-2909-D, 2005 WL 2679699, at *5 (N.D. Tex. 2005); *Baker v. Northland Mortgage Co.*, 344 F. Supp. 1385 (N.D. Ill. 1972).  A failure of a mortgageee to adhere to the HUD servicing requirements in the regulations can be an affirmative defense to foreclosure, but does not form the basis for a claim.  *GMAC Mortg. of Pennsylvania v. Gray,* 1991 WL 268742, at *7-8 (Ohio App. Dec. 19, 1991); *see also In re Shirk*, 437 B.R. 592, 607-08 (Bkrtcy.S.D. Ohio 2010) ("It is well-established that the [National Housing Act] and attending regulations do not expressly or implicitly create a private right of action to mortgagor for a mortgagee's noncompliance with the Act or regulations.); *Federal Nat. Mortg. Ass'n v. LeCrone,* 868 F.2d 190, 193 (6th Cir. 1989) (no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies) (internal citation omitted).  Therefore, Defendant's contention of "wrongful foreclosure" must fail, as it cannot be a cause of action, only an affirmative defense.

In any event, even if Favino could bring a private right of action for Wells Fargo's failure to follow HUD regulations, it would also fail.  HUD regulations require a mortgagee to take loss mitigation action on default of an FHA-insured mortgage.  24 C.F.R. § 203.501.  One action that a mortgagee can take is a modification of the mortgage.  24 C.F.R. §§ 203.501, 203.616.  If there is a modification, and the borrower breaches the agreement, the mortgagee must delay foreclosure for an additional 90 days.  24 C.F.R. § 203.606.  If the mortgaged property is within 200 miles of the mortgagee, its servicer, or a branch of office of either, the mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting before a foreclosure action is instituted against the mortgagor.  24 C.F.R. § 203.604(b), (c)(2).  Favino does

- 22 -

not provide any facts to support his claim that he is entitled to the procedures outlined by the HUD regulations. Favino does not even allege that the Note or the LMA is FHA insured. He only provides elements of HUD regulations. Favino attempts to respond to this argument in his Opposition to the Motion to Dismiss, but still fails to indicate any facts in support of his claim, continuing to only provide conclusory assertions of Well's Fargo's failure to "generate the smallest possible loss" to HUD. (Opp. at 7-8.) Therefore, even if there was a private right of action available for violating HUD regulations, his threadbare allegations without any factual support simply do not state a claim to relief, and accordingly this claim must be dismissed. In addition, Favino's theory that Wells Fargo attempted to foreclose without the right to do so under the LMA is a breach of contract action, and has already been addressed above.

In his response, Favino attempts to switch this claim to one under the Real Estate Procedures Act of 1974 ("RESPA"). (Opp. at 5-8, ECF No. 7-1.) However, the Counterclaim does not include any facts or references to an alleged violation of RESPA by Wells Fargo. The only reference to REPSA anywhere within his Counterclaim is that under RESPA Favino is a borrower and Mortgage Now, Inc. is a servicer. Therefore, even if he could somehow convert his claim into an action under a RESPA, he still fails to include any facts on which to base this claim. In addition, he provides an unworkable basis to even claim relief. He cites to *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979 (6th Cir. 2009), in support of his contention that RESPA creates a general right to act as a private attorney general for a violation of any HUD regulation or FHA policy. (Opp. at 5-6.) Although unclear, Favino seems to be alleging that Wells Fargo violated HUD regulations, which must be RESPA violations, and therefore he has a private right of action. However, there are several problem's with Favino's theory. First, not every RESPA statute or regulation provides for a private right of action. As the court stated in *Morrison v. Brookestone Mortg. Co.*, 415 F.Supp.

- 23 -

2d 801, 805-06 (S.D. Ohio 2005), "[a] review of the RESPA statute shows that Congress provided private civil remedies for violations of certain provisions [of RESPA], *see e.g.,* 12 U.S.C. §§ 2605(f), 2607(d)(2), (5) and 2608(b)." Second, *Welles-Bowen* did not create a private right of action for every RESPA violation. In *Welles-Bowen*, "§ 8 of RESPA, which prohibits kickbacks and unearned fees," was at issue. 553 F.3d at 985; 12 U.S.C. § 2607. The Sixth Circuit took into account the intent of the RESPA to address Congress' concerns over controlled business arrangements and the negative effects of those arrangements on the real estate industry, and noted that in pursuit of these goals, "RESPA allows individuals to police the marketplace in order to *ensure impartiality of referrals and competition* between settlement service providers, thereby creating a market-wide deterrent against unnecessarily high settlement costs." (internal citation omitted, emphasis in original). *Welles-Bowen* did not create a private right of action for all violations of RESPA regulations and statutes. Even if it did, Favino's claim is not actually even based on a violation of RESPA. His claim is that a private right of action exists from RESPA for a violation of 24 C.F.R. § 203.604, for the failure to have a face-to-face meeting. That regulation, though, was promulgated under the National Housing Act, and not RESPA. The National Housing Act does not provide a private right of action for a violation of 24 C.F.R. § 203.604, or any other HUD regulation Favino is alleging Wells Fargo violated. Therefore, even if the court were to recognize Favino's claim as stating a RESPA violation, and a private right of action were allowed for any violation, it still does not create a private right of action for a violation of HUD regulations. Therefore, on this basis also, his claim fails and must be dismissed.

### 7. Breach of Fiduciary Duty

Count Seven of the Counterclaim alleges a breach of fiduciary duty/negligent loan servicing. A fiduciary relationship can be created out of an informal confidential relationship "only when both

- 24 -

parties understand that a special trust or confidence has been reposed." *Umbaugh Pole Bldg. Co. v. Scott*, 390 N.E.2d 320, 324 (Ohio 1979). The *Umbaugh* court further stated that "[t]he relationship of debtor and creditor without more is not a fiduciary relationship." *Id.* In Ohio, "a bank and its customers stand at arm's length in negotiating terms and conditions of a loan." *425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn.*, 927 N.E.2d 46, 60 (Ohio App. 2010) (internal citation omitted). In addition, a claim that a bank is negligently administering a loan is an action in contract and not a tort action, since any duties the bank has arise out of contract, from the framework of the loan agreement. *See Nichols v. Chicago Title Ins. Co.*, 669 N.E.2d 323, 332 (Ohio App. 1995). The Sixth Circuit has stated that "under Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981).

Favino does not allege any facts that indicate that a fiduciary relationship was formed between him and the bank from a "special trust or confidence." He only states that the terms and conditions of the LMA were misrepresented, Wells Fargo "improperly [applied] payments to the delinquency that was cured with the March 2008 Loan Modification Agreement," Wells Fargo's accounting program registered late fees automatically whether or not he made a payment, and that because he was "reliant upon Plaintiff's duty of care, Plaintiff remains liable to Defendant Favino for any harm resulting from its failure to exercise reasonable care to protect Defendants' investment." (Complaint/Counterclaim ¶¶ 47-51.) Therefore, without facts to demonstrate the existence of a fiduciary relationship, Favino cannot claim there was a breach of that relationship. His threadbare allegations without any factual support simply do not state a claim to relief, and accordingly this claim must be dismissed. Additionally, his claim of negligent loan servicing is actually a breach of contract claim (*See Nichols*, 669 N.E.2d at 332), and for the reasons stated

- 25 -

above, must fail, and accordingly also be dismissed.

For the reasons stated above, all of Favino's claims in his Counterclaim must be dismissed, and therefore his Counterclaim is dismissed in its entirety.

### C. Defendant's Motion to Dismiss

Defendant has filed a Motion to Dismiss the Complaint, after filing his Answer (ECF No. 1-1), and after Plaintiff moved for Summary Judgment (ECF No. 13). Favino relies almost entirely on the identical arguments he provided in both his combined Opposition to Plaintiff's and Third Party Defendant FHA's Motions to Dismiss, and his Opposition to Plaintiff's Motion for Summary Judgment. These arguments have already been fully briefed. Favino contends that his loan is federally insured, and that Wells Fargo "failed to allege compliance with all federal laws and regulations." As a result, Favino asserts, Wells Fargo has failed to state a claim for foreclosure on the mortgage securing the note. Favino maintains that a "Complaint filed in federal court for foreclosure of a federally-insured mortgage loan that does not allege compliance with mandatory policies requiring mitigation of financial loss to the government, and mandatory face-to-face meetings with borrowers, is insufficient to overcome a Rule 12(b)(6) challenge." Favino does not offer any case law in support of this contention, only citations to HUD regulations. Though this Motion is untimely, since it should have been filed prior to the Answer, the Sixth Circuit has held that where the substance of the motion is plain, "it is proper to treat a motion styled as one under rule 12(b)(6) as if it were brought under Rule 12(c)," using the same standard of review. *Reed Elsevier, Inc.*, 269 F. Supp.2d 942, 948 (S.D. Ohio 2003) (quoting *Wagner v. Higgins*, 754 F.2d 186, 188 (6th cir. 1985)). Therefore, the court will treat Favino's Motion as one filed under FED.R.CIV.P. 12(c), but will use the FED.R.CIV.P. 12(b)(6) standard.

Under Ohio law, a party seeking to foreclose a mortgage and seek the balance due on a note

- 26 -

must establish the following: (1) execution and delivery of the note and mortgage; (2) valid recording of the mortgage; (3) that it is the current holder of the note; (4) default by mortgagor; and (5) the amount owed.  *See e.g., Countrywide Home Loans, Inc. v. Baker*, No. 09AP-968, 2010 WL 1229180, at *2 (Ohio App. Mar. 20, 2010); *Perpetual Fed. Sav. Bank v. TDS2 Property Mgt. LLC*, No. 09AP-285, 2009 WL 4936380, at *4 (Ohio App. Dec. 22, 2009); *Neighborhood Housing Servs. Of Toledo, Inc. v. Brown*, No. L-08-1217, 2008 WL 5147452, at *3 (Ohio App. Dec. 5, 2008). Wells Fargo alleged Favino executed the Note and the LMA, and that it currently possesses each, and also attached copies of each to its Complaint.  (Complaint ¶ 1, ECF No. 4-1; Note, Ex. A, ECF No. 4-1; LMA, Ex. B.)  Wells Fargo alleged that the Mortgage was recorded, and attached the recorded Mortgage to its Complaint.  (Complaint ¶ 2; Ex. C.)  Wells Fargo alleged that it is the current holder of the Note and the LMA, and that it has received an assignment of the Mortgage, and attached a copy of the notice of assignment to its Complaint.  (Complaint ¶¶ 1, 3; Ex. D.)  Wells Fargo alleged that Favino has defaulted on the Note and the LMA.  (Complaint ¶ 1.)  Wells Fargo also alleged the amount owed on the Note and the LMA.  (*Id*.)  When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Wells Fargo has alleged the facts of each element of its claim, providing enough facts to state a claim of relief that is plausible on its face.  The Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  The court can draw a reasonable inference from the facts alleged by Wells Fargo that Favino is liable for the misconduct alleged.

- 27 -

Favino also argues that Wells Fargo has failed to state a claim for foreclosure of the Mortgage and balance on the Note because it must allege that it complied with HUD regulations, and therefore since it has not the Complaint must be dismissed.  As stated above, the failure of a mortgagee to adhere to HUD regulations can be an affirmative defense.  *See GMAC*, 1991 WL 268742, at *7-8; *see also In re Shirk*, 437 B.R. at 607-08.  The merits of a claim are not supposed to be considered in the Rule 12(b)(6) context, but courts have recognized that there are certain affirmative defenses such as privileges, immunities, failure to exhaust administrative remedies, and statutes of limitations, that can be raised in such motions, where it is clear on the face of the complaint that the affirmative defense is valid.  *See Reed Elsevier, Inc.*, 269 F. Supp. 2d at 947; *Levin v. Childers*, 101 F.3d 44, 48 (6th Cir. 1996) (qualified immunity in a case arising under 42 U.S.C. § 1983 was properly raised on 12(b)(6) motion); *Dixon v. Alexander*, 741 F.2d 121, 122 (6th Cir. 1984) (failure to exhaust administrative remedies properly raised in a 12(b)(6) motion); *Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002) (statute of limitations properly raised in a 12(b)(6) motion).  Unlike those affirmative defenses, there is nothing within Wells Fargo's Complaint that can make it clear that Favino's twelfth affirmative defense, that it "failed to schedule a face-to-face meeting with [him] pursuant to FHA policy" is similarly valid.  As stated above, there is nothing that even requires a meeting in every circumstance.  If there is no branch within 200 miles a meeting is not required.  Favino has not alleged that there was a fact a branch within 200 miles.  This issue, twice raised in his previous filings, was fully addressed by Plaintiff in those previous filings also.  Favino offers nothing new in rebuttal.

In addition, Favino alleges that RESPA supports his claim that Wells Fargo's Complaint should be dismissed.  This is also nothing more than a recycling of his same argument previously presented in his filings.  This too, was fully briefed by Wells Fargo in its replies to Favino's

responses.  Favino offers no new argument in rebuttal.  As stated above, RESPA does not apply to this action, and if it did, it still does not give Favino a private right of action for HUD regulations. This is also not the type of affirmative defense where it is clear from the face of the Complaint that it is valid, properly raised on a 12(b)(6) motion.

Therefore, as Wells Fargo has alleged sufficient facts in its Complaint to state a claim for relief, Favino's Motion to Dismiss is denied.

## V.  CONCLUSION

For the foregoing reasons, Wells Fargo's Motion to Dismiss Favino's Counterclaim (ECF No. 4) and FHA's Motion to Dismiss for Lack of Subject Matter Jurisdiction are granted (ECF No. 3), and Favino's Motion to Dismiss is denied (ECF No.13).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 31, 2011

- 29 -